UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEFFREY YOUNG,

                                Plaintiff,

                                                            9:18-CV-0782
v.                                                          (BKS/ML)

S. SHIPMAN, Prison Guard, and
R. SAWYER, Prison Staff,

                                Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

JEFFREY YOUNG
    Plaintiff, *Pro Se*
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

LETITIA A. JAMES                                JOHN F. MOORE, ESQ.
Attorney General for the State of New York      Assistant Attorney General
    Counsel for Defendants
The Capitol
Albany, New York 12224


MIROSLAV LOVRIC, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for a Report and Recommendation by the Honorable Brenda K. Sannes, United States District Judge.  Currently before the Court, in this civil rights action filed by Jeffrey Young ("Plaintiff") against S. Shipman and R. Sawyer (collectively "Defendants"), is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 39.)  For the reasons set forth below, I recommend that Defendants' motion for summary judgment be granted.

# TABLE OF CONTENTS

I.     RELEVANT BACKGROUND ........................................................................ 1

    A.   Plaintiff's Claims ................................................................................ 1

    B.   Statement of Undisputed Material Facts ........................................... 1

    C.   Parties' Briefing on Defendants' Motion for Summary Judgment ............. 5

II.    RELEVANT LEGAL STANDARDS ........................................................... 9

    A.   Standard Governing a Motion for Summary Judgment ........................ 9

    B.   Standard Governing Exhaustion of Administrative Remedies ............... 12

    C.   Standard Governing a Free Exercise Claim ........................................ 15

    D.   Standard Governing a Retaliation Claim ............................................ 16

III.   ANALYSIS ................................................................................................. 18

    A.   Whether Plaintiff Exhausted His Administrative Remedies ................... 18

    B.   Whether a Genuine Issue of Fact Precludes Dismissal of Plaintiff's Claims ............ 26

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Claims

Generally, liberally construed, Plaintiff's Amended Complaint asserts the following two

claims: (1) a claim that Defendant Shipman violated his right to free exercise of religion pursuant

to the First Amendment and 42 U.S.C. § 1983; and (2) a claim that Defendants retaliated against

him in violation of the First Amendment and 42 U.S.C. § 1983.  (Dkt. No. 10; Dkt. No. 15.)  As

relief, Plaintiff seeks compensatory and punitive damages.  (Dkt. No. 10 at 8.)  The Court's

Decision and Order dated October 10, 2018, thoroughly outlines Plaintiff's allegations and

claims.  (Dkt. No. 15.)  Familiarity with the Amended Complaint is assumed in this Report-

Recommendation.

### B.    Statement of Undisputed Material Facts

Unless otherwise noted, the following facts were asserted and supported by Defendants in

their Rule 7.1 Statement and not denied by Plaintiff in a Rule 7.1 Response.  (*Compare* Dkt. No.

39, Attach. 1 [Defs.' Rule 7.1 Statement], *with* Dkt. No. 41 [Pl.'s Response].)

1.    Plaintiff Jeffrey Young is an inmate in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS").

2.    Plaintiff is currently housed at Sing Sing Correctional Facility, but was housed at

Clinton Correctional Facility ("Clinton") during the relevant time period described in the

Amended Complaint.

3.    Defendant Sawyer is an Industrial Training Supervisor at Clinton.

4.    Defendant Shipman is a Correction Officer ("C.O.") at Clinton.

5.    On March 23, 2018, Defendant Sawyer was working at a tailor shop ("Tailor

Shop 3") at Clinton, assisting inmates with sewing articles of clothing.

6.    Defendant Shipman was the C.O. assigned to supervise the inmates in Tailor Shop 3 on March 23, 2018.

7.    Plaintiff was working in Tailor Shop 3 on March 23, 2018.

8.    Defendants had never met and did not know each other before March 23, 2018.

9.    Defendant Shipman did not regularly work in Tailor Shop 3, but was temporarily assigned to work in there on March 23, 2018.

10.    On March 23, 2018, Defendant Shipman escorted the inmates in Tailor Shop 3 to lunch and then back to the tailor shop.

11.    After returning from lunch on March 23, 2018, Defendant Shipman was sitting at his desk when Plaintiff approached him and asked if a call had gone out for Jumu'ah services yet.

12.    Jumu'ah services are a Muslim religious service held weekly.

13.    On March 23, 2018, when Plaintiff first approached Defendant Shipman and asked whether Jumu'ah services had been called, Defendant Shipman had not yet heard a call for Jumu'ah services through his two-way radio on his belt.

14.    Defendant Shipman instructed Plaintiff to return to his work area, and Plaintiff initially complied.

15.    Defendant Shipman then contacted the control center to see if Jumu'ah services had been called, and the person that Defendant Shipman spoke with informed him that Jumu'ah services had not yet been called.

16.    Later that afternoon, around 12:50 p.m., Plaintiff approached Defendant Shipman's desk and again asked if Jumu'ah services had been called.

2

17.    At that time, Defendant Shipman still had not heard a call out for Jumu'ah services but expected that services would be called shortly.

18.    Defendant Shipman again ordered Plaintiff to return to his work area and informed Plaintiff that he would notify the shop when Jumu'ah services were called.

19.    Plaintiff refused to comply with Defendant Shipman's direct order to return to his work area, and instead asked Defendant Shipman to call a sergeant to inquire about the start time of Jumu'ah services.

20.    Defendant Shipman informed Plaintiff that he would not call a sergeant (because the start time of a religious service is not something that he would ordinarily bring to the attention of a sergeant) and he expected the call for Jumu'ah services to go out shortly.

21.    At that point, Plaintiff still refused to return to his desk area.[1]

22.    Defendant Shipman called for a keep-lock escort team (a team of officers to escort Plaintiff to a keep-lock cell) because Plaintiff had refused two direct orders.

23.    Defendant Shipman also issued Plaintiff a misbehavior report in accordance with DOCCS policies and procedures based on Plaintiff's disruptive conduct and failure to comply with direct orders.  Defendant Shipman charged Plaintiff with three facility rule violations: 104.13 (creating a disturbance); 107.10 (interference with employee); and 106.10 (refusing a direct order).

24.    Defendant Sawyer signed her name on the misbehavior report, next to the "endorsement" line, since she witnessed the events that gave rise to the issuance of the report pursuant to DOCCS policy.

---

[1]    Plaintiff testified that he did not swear at Defendant Shipman.  (Dkt. No. 39, Attach. 5 at 66.)  As a result, I find that an issue of fact exists with respect to that portion of Defendants' asserted fact.  (Dkt. No. 39, Attach. 1 at ¶ 23.)

25.     Plaintiff would have still been issued the misbehavior report without Sawyer's endorsement on the report.

26.     A disciplinary hearing was subsequently held in connection with the misbehavior report.  Plaintiff was found guilty of the charges against him at the hearing and was sentenced to a period of keep-lock confinement.

27.     Defendant Sawyer testified at Plaintiff's hearing pursuant to the request of the Hearing Officer.

28.     While Plaintiff served his sentence in keep-lock confinement, Defendant Shipman had no involvement in any decision about whether Plaintiff was permitted to attend Jumu'ah or other religious services.

29.     Plaintiff has an extensive disciplinary history as a DOCCS inmate.

30.     In March 2018 (but before March 23, 2018), Plaintiff filed a grievance regarding reading materials allowed in the tailor shops, and mentioned Defendant Sawyer's name and the name of the Correction Officer who was then assigned to Tailor Shop 3.

31.     Defendant Shipman did not issue Plaintiff a misbehavior report in retaliation for (a) Plaintiff filing a prior grievance against Defendant Sawyer, (b) asking to attend religious services, (c) asking that Defendant Shipman call a sergeant about the call out for Jumu'ah services, or (d) any other improper reason.

32.     Defendant Sawyer did not endorse the misbehavior report or testify at the disciplinary hearing in connection with the misbehavior report because of the prior grievance that Plaintiff filed against her or for any other improper purpose.

33.     Plaintiff filed a grievance (Grievance CL-73319-18) on April 2, 2018, alleging that Defendants denied Plaintiff's right to attend Jumu'ah Services in retaliation for the prior grievance that Plaintiff filed against Defendant Sawyer.

34.     Plaintiff's grievance did not include any allegations regarding the misbehavior report that Defendant Shipman issued.

35.     Plaintiff ultimately appealed this grievance to CORC, and CORC received Plaintiff's appeal on May 10, 2018.

36.     At the time Plaintiff filed his Complaint, CORC had not yet issued a determination regarding his grievance.

### C.     Parties' Briefing on Defendants' Motion for Summary Judgment

#### 1.     Defendants' Memorandum of Law

Generally, in support of their motion for summary judgment, Defendants assert the following three arguments: (1) with respect to Plaintiff's free exercise claim pursuant to the First Amendment, Plaintiff cannot establish that his religious belief was substantially burdened or that Defendant Shipman's conduct was not reasonably related to a legitimate penological interest; (2) Plaintiff's retaliation claim pursuant to the First Amendment fails (a) against Defendant Shipman because there is no evidence of a causal connection between the protected activity and the adverse action, and (b) against Defendant Sawyer because Plaintiff cannot establish that (i) she took an adverse action against him, or (ii) a causal connection exists between his protected conduct and any purported adverse action taken against him; and (3) in any event, Plaintiff failed to exhaust his administrative remedies because (a) CORC had not issued a decision by the date that Plaintiff filed his Complaint, and (b) Plaintiff's grievance did not include any allegations

regarding the misbehavior report issued by Defendant Shipman and endorsed by Defendant Sawyer.  (*See generally* Dkt. No. 39, Attach. 2 [Defs.' Mem. of Law].)

More specifically, with respect to Plaintiff's free exercise claim, Defendants argue that even if Defendant Shipman denied Plaintiff's right to attend Jumu'ah services on March 23, 2018, missing one (or even several) weekly religious services does not substantially burden an inmate's right to exercise his religion.  (*Id.*)  In addition, Defendants argue that Defendant Shipman was not personally involved in the decision to sentence Plaintiff to keep-lock confinement nor was he involved in any decision regarding whether Plaintiff was permitted to attend Jumu'ah services while he served his sentence in keep-lock confinement.  (*Id.*)  As a result, Defendants argue that Defendant Shipman cannot be held liable pursuant to 42 U.S.C. § 1983 for the Jumu'ah services that Plaintiff may have missed while in keep-lock confinement. (*Id.*)  Moreover, Defendants argue that Plaintiff cannot demonstrate that Defendant Shipman's conduct was not reasonably related to a legitimate penological interest because Defendant Shipman issued Plaintiff a misbehavior report due to Plaintiff's disruptive conduct, which resulted in Plaintiff being sent to a keep-lock cell and missing the Jumu'ah service on March 23, 2018.  (*Id.*)

With respect to Plaintiff's retaliation claim against Defendant Shipman, Defendants argue that it is difficult to establish one defendant's retaliation for complaints against another defendant.  (*Id.*)  Defendants argue that Defendant Shipman submitted a sworn declaration indicating that he issued Plaintiff the misbehavior report solely because of Plaintiff's violations of DOCCS policies and procedures and not for any retaliatory purpose or because Plaintiff asked to attend religious services.  (*Id.*)  Defendants also argue that Plaintiff's conclusory allegations

about a conversation between Defendants about Plaintiff's grievance against Defendant Sawyer is insufficient to overcome summary judgment.  (*Id.*)

With respect to Plaintiff's retaliation claim against Defendant Sawyer, Defendants argue that endorsing a misbehavior report issued by someone else is not an adverse action.  (*Id.*)  Defendants also argue that even if endorsing the misbehavior report of Defendant Shipman was an adverse action by Defendant Sawyer, Plaintiff cannot establish a causal connection because Defendant Sawyer attested that she endorsed the misbehavior report solely because she witnessed the events and not because of Plaintiff's prior grievance against her. (*Id.*)  Moreover, Defendants argue that Defendant Sawyer testified at Plaintiff's Tier II disciplinary proceeding because the Hearing Officer requested that she do so, and not in retaliation against Plaintiff.  (*Id.*)

Finally, Defendants argue that in any event, Plaintiff failed to exhaust his administrative remedies because he commenced this lawsuit before receiving a decision from CORC.  (*Id.*)  In addition, Defendants argue that Plaintiff's grievance did not include any allegations regarding the misbehavior report that Defendant Shipman issued and thus, any allegations in the Amended Complaint related to the misbehavior report are also subject to dismissal.  (*Id.*)

## 2.    Plaintiff's Opposition Memorandum of Law

Generally, in his opposition, Plaintiff asserts the following three arguments: (1) genuine issues of material fact exist as to whether Defendant Shipman intentionally denied Plaintiff's right to attend the Jumu'ah services on March 23, 2018, because (a) Plaintiff heard Defendant Shipman's two-way radio crackling and observed Defendant Sawyer point at Plaintiff and the other Muslim inmates in Tailor Shop 3, and (b) the timesheets for Tailor Shops 1 and 2 on March 23, 2018, reflect that the call for Jumu'ah services was made at approximately 12:20 p.m.; (2) genuine issues of material fact exist as to whether there is a causal connection between his

protected speech—the grievance against Defendant Sawyer—and the adverse actions on March 23, 2018, because (a) Plaintiff overheard Defendants discussing the grievance that he previously filed against Defendant Sawyer, (b) Plaintiff had been instructed that if he experienced any issue with call out for Muslim services, to request the guard contact the watch commander or area sergeant, and (c) Defendant Sawyer testified untruthfully at the disciplinary hearing when she stated that on March 23, 2018, the other two Muslim inmates in Tailor Shop 3 were permitted to attend Jumu'ah services; and (3) Plaintiff has exhausted his administrative remedies because an unreasonable period of time, over and above the thirty days permitted for CORC to issue a decision, had passed before filing his complaint and to date, CORC has failed to issue a decision. (*See generally* Dkt. No. 41 [Pl.'s Opp'n Mem. of Law].)

### 3.    Defendants' Reply Memorandum of Law

Generally, in their reply, Defendants assert the following four arguments: (1) there is no issue of fact that Defendant Shipman did not cause Plaintiff to miss more than one Jumu'ah service, which is insufficient to establish a free exercise claim pursuant to the First Amendment; (2) Plaintiff failed to offer any evidence that Defendant Sawyer testified falsely at his Tier II disciplinary hearing; (3) Plaintiff's conclusory assertion that he heard a crackle over the radio does not suggest that it was the call for Jumu'ah services and, in any event, Defendant Shipman did not hear the call for Jumu'ah services on March 23, 2018; and (4) Plaintiff's conclusory story of a conspiratorial conversation between Defendants is insufficient to overcome summary judgment.  (*See generally* Dkt. No. 42 [Defs.' Reply Mem. of Law].)

## II.      RELEVANT LEGAL STANDARDS

### A.      Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that

there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as

a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence

is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).[2] As for the materiality requirement, a dispute of fact is

"material" if it "might affect the outcome of the suit under the governing law . . . . Factual

disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all

ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255.

In addition, "[the movant] bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of the . . . [record] which it believes

demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S.

317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must

come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ.

P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant

willfully fails to respond to a motion for summary judgment, a district court has no duty to

perform an independent review of the record to find proof of a factual dispute–even if that non-

---

[2]       As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to
create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation
omitted). As the Supreme Court has explained, "[The non-movant] must do more than simply
show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*
*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

movant is proceeding *pro se*.[3]  (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[4]  As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[5]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

---

[3]     *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[4]     *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

[5]     *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[6]–even when the non-movant was proceeding *pro se*.[7]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[8]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

---

[6]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[7]     *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.").

[8]     *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

**B.     Standard Governing Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) ("The [PLRA] mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions.").  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly.  *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (quoting *Woodford*, 548 U.S. at 90) (exhaustion necessitates "'using all steps that the [government] agency holds out, and doing so properly'").  In New York State prisons, DOCCS has a well-established three-step inmate grievance program ("IGP").  7 N.Y.C.R.R. § 701.5.

First, an inmate must file a complaint with the facility IGP clerk within twenty-one days of the alleged occurrence.  7 N.Y.C.R.R. § 701.5(a)(1).  A representative of the facility's inmate grievance review committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue.  *Id.* § 701.5(b)(1).  If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id.* §

701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id.* § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the facility superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to CORC for a decision under the process applicable to the third step. *Id.* § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id.* § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* § 701.5(d)(3)(ii).

Grievances claiming employee harassment, including claims of excessive force, "are of particular concern to the administration of [DOCCS] facilities," and subject to an expedited procedure whereby the grievance goes directly to the facility superintendent. *Id.* § 701.8; *see, e.g., Torres v. Carry*, 691 F. Supp. 2d 366 (S.D.N.Y. 2009) (Section 701.8 has been found applicable to claims of excessive force). The superintendent is required to initiate an in-house investigation by higher-ranking supervisory personnel, request an investigation by the Inspector General's office, or request an investigation by the New York State Police Bureau of Investigation if the superintendent determines that criminal activity may be involved. 7 N.Y.C.R.R. § 701.8(d).

A grievance referred to the superintendent and determined to be an allegation of harassment may not be withdrawn and must be addressed by the superintendent. *Id.* The

13

superintendent is required to render a decision on the grievance within twenty-five calendar days, and extensions may be granted only with the consent of the grievant. *Id.* § 701.8(f). If the superintendent fails to respond within the required twenty-five days, the grievant may appeal the grievance to CORC by "filing a notice of decision to appeal (form #2133) with the inmate grievance clerk." *Id.* § 701.8(g). If the grievant wishes to appeal the superintendent's response to CORC, he must do so within seven calendar days of receipt of that response. *Id.* § 701.8(h).

Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).") (quotations marks and citations omitted).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]") (quotation marks and citations omitted). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. First,

14

"an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. In *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" The illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry. *Mena v. City of New York*, 13-CV-2430, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Because non-exhaustion is an affirmative defense, the defendants bear the burden of showing that a prisoner has failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at 216. The plaintiff must then establish the IGP grievance procedure was unavailable to him under *Ross*. *Id.*

     **C.**     **Standard Governing a Free Exercise Claim**

Prisoners have "long been understood to retain some measure of" their rights under the free exercise clause. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). These rights, however, must be balanced against the "interests of prison officials charged with complex duties arising from administration of the penal system." *Ford*, 352 F.3d at 588. Therefore, prisoners' free exercise clause claims are judged "under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* First, a "prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely

held religious beliefs."[9]  *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2004).  If the prisoner

satisfies these threshold requirements, "[t]he defendants then bear the relatively limited burden

of identifying the legitimate penological interests that justify the impinging conduct; the burden

then remains with the prisoner to show that these articulated concerns were irrational."

*Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006) (quoting *Ford*, 352 F.3d at 595).

Determining whether a plaintiff's free exercise rights have been substantially burdened

"requires courts to distinguish important from unimportant religious beliefs, a task for which we

have already explained courts are particularly ill-suited."  *Ford*, 352 F.3d at 593.  As a result,

"our Circuit's precedents have been appropriately wary of making 'conclusory judgments about

the unimportance of the religious practice to the adherent.'"  *Brandon v. Kinter*, 938 F.3d 21, 32

(2d Cir. 2019) (quoting *Ford*, 352 F.3d at 593).  "While the substantial burden requirement

presupposes that there will be cases in which it comfortably could be said that a belief or practice

is so peripheral to the plaintiff's religion that any burden can be aptly characterized as

constitutionally de minimis, establishing a substantial burden is not a particularly onerous task."

*Brandon*, 938 F.3d at 32. (internal quotation marks omitted).

### D.      Standard Governing a Retaliation Claim

A cognizable retaliation claim pursuant to 42 U.S.C. § 1983, lies when prison officials

take adverse action against an inmate that is motivated by the inmate's exercise of a

constitutional right, including the free speech provisions of the First Amendment.  *See Friedl v.*

---

[9]      "Our Circuit has not yet decided whether the substantial burden requirement remains
good law after the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872,
887 (1990).  The Supreme Court's language in *Smith* 'took issue with the premise that courts can
differentiate between substantial and insubstantial burdens.'  *Ford*, 352 F.3d at 592 (citing *Smith*,
494 U.S. at 887.  Other Circuits have disagreed over whether the substantial burden test
continues to apply to free exercise claims in the aftermath of *Smith*."  *Brandon v. Kinter*, 938
F.3d 21, 32 n.7 (2d Cir. 2019).

*City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). As the Second Circuit has repeatedly cautioned, however, because such claims are easily incanted and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus, courts must approach such claims "with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *accord, Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

To state a *prima facie* claim pursuant to 42 U.S.C. § 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that (1) the conduct at issue was protected, (2) the defendants took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, 99-CV-2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.).

If the plaintiff carries this burden, then to avoid liability the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct." *Mount Healthy*, 429 U.S. at 287. If taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

Analysis of retaliation claims thus requires careful consideration of the protected activity in which the inmate plaintiff has engaged, the adverse action taken against him or her, and the evidence tending to link the two. When such claims, which are exceedingly case specific, are alleged in only conclusory fashion, and are not supported by evidence establishing the requisite nexus between any protected activity and the adverse action complained of, a defendant is entitled to the entry of summary judgment dismissing plaintiff's retaliation claims. *Flaherty*, 713 F.2d at 13.

It should also be noted that personal involvement of a named defendant in any alleged constitutional deprivation is a prerequisite to an award of damages against that individual under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). As is true of other types of claims, this principle applies to causes of action claiming unlawful retaliation. *See Abascal v. Hilton*, 04-CV-1401, 2008 WL 268366, at *10 (N.D.N.Y. Jan. 30, 2008) (Kahn, J. and Lowe, M.J.).

III. **ANALYSIS**

A. **Whether Plaintiff Exhausted His Administrative Remedies**

1. **Grievance CL-73319-18**

After carefully considering the matter, I recommend granting Defendants' motion for summary judgment for failure to exhaust administrative remedies based on Plaintiff's failure to obtain a decision from CORC before filing his complaint, for the reasons stated in their

memoranda of law.  (Dkt. No. 39, Attach. 2; Dkt. No. 42.)  To those reasons, I add the following

analysis, which is intended to supplement but not supplant Defendants' reasons.

Applying the legal standard set forth above in Part II.B. of this report and

recommendation, the issue of exhaustion involves a two-step analysis: (1) the Court must

determine whether Plaintiff properly exhausted his administrative remedies by following the

steps required by the administrative review process, (2) if Plaintiff did not exhaust his

administrative remedies, the Court must then determine whether the administrative remedy was

available to Plaintiff.  *Hamlett*, 2019 WL 4306999, at *8.  Both steps of the analysis are relevant

here.

### a.    Plaintiff's Failure to Exhaust

"Receiving a decision from CORC after filing a federal lawsuit, . . . does not satisfy the

PLRA's requirement that administrative remedies be exhausted before filing suit and any such

action, absent a determination that the IGP was unavailable to [the] plaintiff, must be denied

without prejudice."  *Sherwood v. Senecal*, 17-CV-0899, 2019 WL 5197606, at *5 (N.D.N.Y.

May 20, 2019) (Dancks, M.J.) (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001),

*overruled on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002)), *adopted* 2019 WL

4564881 (N.D.N.Y. Sept. 20, 2019) (Sannes, J.).

Here, as of July 5, 2019, Plaintiff's Grievance CL-73319-18, was "still pending before

CORC."  (Dkt. No. 39, Attach. 11 at ¶ 15.)  As a result, I find that Plaintiff failed to exhaust his

administrative remedies before filing this action.

### b.    Availability of Administrative Remedies

As explained above, the Court's finding that Plaintiff failed to exhaust his administrative

remedies does not end the exhaustion review.  The question remains, however, whether

exhaustion under the IGP was unavailable to Plaintiff pursuant to *Ross* and *Williams* where Plaintiff waited approximately twenty-six days, beyond the thirty-day deadline for CORC to issue its decision under the IGP, to commence this action. *Ross v. Blake*, 136 S. Ct. 1850 (2016); *Williams v. Corr. Officer Priatno*, 829 F.3d 118 (2d Cir. 2016).

Courts in the Second Circuit are split regarding whether a failure by CORC to timely respond to an appeal constitutes unavailability excusing a failure to exhaust. *Compare Berkley v. Ware*, 16-CV-1326, 2018 WL 3736791, at *6 (N.D.N.Y. July 6, 2018) (Hummel, M.J.) (finding five month delay by CORC in rendering decision on appeal did not excuse Plaintiff from exhaustion requirement), *and Loccenitt v. Labrake*, 14-CV-6703, 2018 WL 826850, at *3 (W.D.N.Y. Feb. 12, 2018) (finding that a delay by CORC in rendering a decision on a plaintiff's appeal was not a defense to the exhaustion requirement), *with Henderson v. Annucci*, 14-CV-445A, 2016 WL 3039687, at *10 (W.D.N.Y. Mar. 14, 2016) ("Since plaintiff has been awaiting a decision from CORC for more than two years with respect to his grievance, . . . such an administrative remedy is no longer available to him for purposes of exhaustion under the PLRA"), *and Rossi v. Fischer*, 13-CV-3167, 2015 WL 769551, at *6 (S.D.N.Y. Feb. 24, 2015) (where CORC did not decide appeal until more than four months after it was filed, the court found that administrative remedies were not available to the plaintiff and denied dismissal for failure to exhaust).

A number of the more recent district courts deciding the issue of availability of exhaustion when CORC has failed to render a timely decision have considered the issue under *Ross*, 136 S. Ct. at 1858-59, and *Williams*, 829 F.3d at 126, and concluded that exhaustion was unavailable to inmates in various instances where CORC had failed to decide an appeal in a timely manner under the regulations. The policy concerns expressed in *Bell v. Napoli*, about the

20

potential for CORC to limit inmates' access to federal court "by thwarting [their] attempt to exhaust" must be taken seriously. *Bell v. Napoli*, 17-CV-0850, 2018 WL 6506072, at *7 (N.D.N.Y. Dec. 11, 2018) (Baxter, M.J.). However, the policy concerns underlying the PLRA must also be considered. "The exhaustion requirement aims to provide prison officials the opportunity to resolve matters without the need for litigation." *Dublino v. Schenk*, 19-CV-0381, 2020 WL 263664, at *4 (N.D.N.Y. Jan. 17, 2020) (Stewart, M.J.) (citing *Jones v. Bock*, 549 U.S. 199, 204 (2007)). "Beyond a doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

The relevant time period for purposes of deciding whether a failure by CORC to timely decide an appeal renders a prisoner's administrative remedies unavailable for purposes of *Ross v. Blake*, 136 S. Ct. 1850 (2016), is the delay between the date that a decision by CORC was due (i.e., 30 days after the prisoner's filing of his appeal to CORC) and the date that the prisoner's federal court complaint was signed (which, pursuant to the Prison Mailbox Rule, is the date of the filing of the prisoner's court action). *Mayandeunas v. Bigelow*, 18-CV-1161, 2019 WL 3955484, at *4, n.10 & 11 (N.D.N.Y. Aug. 22, 2019) (Suddaby, C.J.) (citing *Rodriguez v. Reppert*, 14-CV-0671, 2016 WL 6993383 (W.D.N.Y. Nov. 11, 2016), *adopting* 2016 WL 11483439 (W.D.N.Y. Sept. 28, 2016) (indicating that the CORC appeal was filed on May 20, 2014, meaning the decision was due on June 19, 2014, and indicating that the complaint was filed on August 13, 2014, without mentioning that it was dated July 6, 2014, and thus "filed" pursuant to the Prison Mailbox Rule on that date, a mere seventeen days after the due date of the CORC decision); *Gizewski v. New York State Dep't of Corr. and Cmty. Supervision*, 692 F. App'x 668, 670, n.3 ("The eventual denial [of the appeal to CORC] does not cure the failure to exhaust [because] [s]ubsequent exhaustion after suit is filed is insufficient.")).

21

Here, Plaintiff filed his appeal to CORC on April 27, 2018 (Dkt. No. 39, Attach. 11 at ¶ 15), meaning that a decision from CORC was due on or before May 27, 2018. Pursuant to the Prison Mailbox Rule, Plaintiff filed his Complaint on June 22, 2018 (Dkt. No. 1 at 5), which means that the CORC decision was twenty-six days late at the time of filing.

Twenty-six days is not a "delay" that could render the grievance process unavailable to Plaintiff. *Compare Dublino*, 2020 WL 263664, at \*5 (recommending dismissal for failure to exhaust administrative remedies where the plaintiff filed a complaint approximately eleven days after the thirty-day time period that CORC had to render a decision), *and Fabrizio v. Annucci*, 18-CV-0339, 2019 WL 5287959, at \*3 (N.D.N.Y. Oct. 18, 2019) (Suddaby, C.J.) (a delay of "61 days is too short" to deem DOCCS grievance process unavailable), *with Mayandeunas v. Bigelow*, 18-CV-1161, 2019 WL 5273527, at \*6-7 (N.D.N.Y. May 21, 2019) (Dancks, M.J.) (finding that exhaustion had been unavailable where the plaintiff filed his complaint one-hundred thirty-six days after the thirty-day time period that CORC had to render a decision), *adopted* 2019 WL 3955484 (N.D.N.Y. Aug. 22, 2019) (Suddaby, C.J.), *Sherwood v. Senecal*, 17-CV-0899, 2019 WL 5197606, at \*5-7 (N.D.N.Y. May 20, 2019) (Dancks, M.J.) (same where the delay was sixty-nine days), *adopted* 2019 WL 4564881 (N.D.N.Y. Sept. 20, 2019) (Sannes, J.), *Lovell v. McAuliffe*, 18-CV-0685, 2019 WL 4143361, at \*4-7 (N.D.N.Y. May 1, 2019) (Hummel, M.J.) (same where delay was three-hundred fifty-one days), *adopted* 2019 WL 4142593 (N.D.N.Y. Aug. 30, 2019) (McAvoy, J.), *High v. Switz*, 17-CV-1067, 2018 WL 3736794, at \*5 (N.D.N.Y. July 9, 2018) (Stewart, M.J.) (same where the delay was approximately one-hundred eighty-eight days), *adopted* 2018 WL 3730175 (N.D.N.Y. Aug. 6, 2018) (Kahn, J.), *and Rodriguez v. Reppert*, 14-CV-0671, 2016 WL 6993383, at \*2-3 (W.D.N.Y. Nov. 11, 2016) (same where the delay was nearly two months); *but see Bell v. Napoli*, 17-CV-

0850, 2018 WL 6506072, at *4-7 (N.D.N.Y. Dec. 11, 2018) (Baxter, M.J.) (finding that exhaustion had been unavailable where the plaintiff filed a complaint thirty-nine days after the thirty-day time period that CORC had to render a decision).

Mindful of the intent of the PLRA, I recommend finding that on the facts of this case, administrative remedies were available to Plaintiff regarding his grievance such that the filing of this action without receiving a decision from CORC mandates dismissal. When Plaintiff filed this action, the time within which CORC should have issued a decision on his appeal had expired, but just barely. If the DOCCS grievance process is deemed "unavailable" to every inmate whose CORC appeal decision is late, inmates will be incentivized to file lawsuits immediately upon the expiration of that thirty-day limit, a result that could significantly undermine Congress's intent in requiring complete exhaustion. *See Mayandeunas*, 2019 WL 3955484, at *4 (expressing wariness about a rule that would permit inmates to "rush to court immediately after the expiration of the thirty-day deadline for a CORC decision.").

In addition, Plaintiff's amendment to his original Complaint does not cure this defect. "Where a plaintiff files an amended complaint, the operative date for an exhaustion analysis is the date of plaintiff's original complaint." *Fabrizio v. Annucci*, 18-CV-0339, 2019 WL 3351643, at *8 (N.D.N.Y. June 27, 2019) (Peebles, M.J.) (citing *Guillory v. Haywood*, 13-CV-1564, 2015 WL 268933, at *11 (N.D.N.Y. Jan. 21, 2015) (D'Agostino, J.) ("[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced."); *Shepherd v. Lempke*, 10-CV-1524, 2017 WL 1187859, *3 (N.D.N.Y. Mar. 30, 2017) (discussing post-commencement exhaustion)); *see also Burgos v. Craig*, 307 F. App'x 469, 471 (2d Cir. 2008) (observing that subsequent exhaustion "is not enough to save his suit, because [the inmate] is required to have properly exhausted before he sues.").

23

As a result, I recommend granting Defendants' motion for summary judgment and dismissing Plaintiff's claims without prejudice because Plaintiff failed to exhaust his administrative remedies.[10]

Because a new complaint filed in short order would likely be timely under the applicable statute of limitations and there has now been a significant delay in the issuance of a decision by CORC, such that a court could find that the current delay has rendered the grievance process unavailable, *see Mayandeunas*, 2019 WL 3955484, at *5 ("At some point CORC must face the consequences of its delays"), I will consider Defendants' remaining arguments in the alternative.[11]

### 2.    Omissions in Grievance CL-73319-18

Plaintiff's Grievance CL-73319-18 does not include any allegations regarding the misbehavior report that Defendant Shipman authored and Defendant Sawyer endorsed.  (Dkt. No. 39, Attach. 12.)

"The scope of proper exhaustion under the PLRA is determined by reference to the state's grievance system's procedural rules."  *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)).  The IGP regulations direct that a grievance

---

[10]    "Even if the Court were to recommend that Defendants be granted summary judgment for failure to exhaust, the recommendation would include that it be without prejudice.  Thus, if the District Court were to grant Defendants' motion for summary judgment, Plaintiff would be allowed to immediately refile his complaint as a new action since CORC has now decided his appeal."  *Sherwood*, 2019 WL 5197606, at *7, n.6 (citing *Loccenitt v. Labrake*, 14-CV-6703, 2018 WL 826850, at *3 (W.D.N.Y. Feb. 12, 2018)); *see also Toliver v. Stefinik*, 12-CV-0077, 2016 WL 3349316, at *7 (N.D.N.Y. June 15, 2016) (D'Agostino, J) (dismissing without prejudice, the plaintiff's unexhausted claims).

[11]    The Second Circuit has made clear that, "administrative exhaustion is not a jurisdictional predicate," but rather, "an affirmative defense."  *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004).

should contain "a concise, specific description of the problem."  7 N.Y.C.R.R. § 701.5(a)(2).

The Second Circuit has stated that this standard does not require a grievance to "lay out the facts,

articulate legal theories, or demand particular relief.  All the grievance need to is object

intelligibly to some asserted shortcoming."  *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir.

2004).  However, "[t]he benefits of exhaustion can be realized only if the prison grievance

system is given a fair opportunity to consider the grievance."  *Woodford v. Ngo*, 548 U.S. 81, 95

(2006).  "In order to exhaust, therefore, inmates must provide enough information about the

conduct of which they complain to allow prison officials to take appropriate responsive

measures."  *Johnson*, 380 F.3d at 697.  "While the PLRA does not require a legal theory of

liability to be set forth in an inmate's grievance . . . the alleged *misconduct* must . . . be described

adequately."  *Murray v. Gillani*, 12-CV-0401, 2013 WL 838351, at *7 (N.D.N.Y. Feb. 11, 2013)

(Baxter, M.J.).

Having reviewed Plaintiff's grievance (Grievance CL-73319-18), I find that Plaintiff

adequately set forth his issues regarding the alleged retaliation by Defendants.  While Plaintiff's

grievance does not explicitly mention the misbehavior report authored by Defendant Shipman, it

states that Defendants "act[ed] in concert . . . [b]ecause [Plaintiff] filed a prior grievance against

[Defendant Sawyer]."  (Dkt. No. 39, Attach. 12 at 2.)  Notably, Plaintiff's grievance also

mentioned both Defendants by name, the date, and location of the incident in question.  (*Id.*)  I

find that an official investigating Plaintiff's grievance would reasonably be expected to explore

the misbehavior report that Defendant Shipman filed against Plaintiff.  *See Turner v. Goord*, 376

F. Supp. 2d 321, 325 (W.D.N.Y. 2005) (finding that the plaintiff failed to exhaust his

administrative remedies where his grievance failed to "alert[] the authorities that plaintiff was

making such an allegation, nor would an official investigating plaintiff's grievance reasonably be

expected to have explored such matters."); *compare Espinal v. Goord*, 558 F.3d 119, 127 (2d Cir. 2009) (finding that the grievance was sufficiently specific and exhausted his claims against the defendants where it named the involvement of two individuals and "countless other security officers" in the beating, included the specific date, time, and location of the incident about which he complained, and that he was beaten for retaliatory reasons), *with Murray*, 2013 WL 838351, at *7-8 (recommending dismissal for failure to exhaust administrative remedies where the grievance did not mention either defendant or that the plaintiff believed that the action complained of was due to retaliation).

As a result, I recommend denying Defendants' motion for summary judgment to the extent that it is based on failure to exhaust administrative remedies for failure to specifically identify the misbehavior report that Defendant Shipman issued.

**B.    Whether a Genuine Issue of Fact Precludes Dismissal of Plaintiff's Claims**

**1.    Plaintiff's Free Exercise Claim**

After carefully considering the matter, I recommend denying Defendants' motion for summary judgment on Plaintiff's free exercise claim with respect to their alternative argument that Plaintiff cannot establish his religious beliefs were substantially burdened or that Defendant Shipman's conduct was not reasonably related to a legitimate penological interest.  (Dkt. No. 39, Attach. 2.)

This case raises a genuine issue of material fact regarding whether Plaintiff's religious beliefs were substantially burdened when he was prevented from attending Jumu'ah services on March 23, 2018.  Defendants' arguments are undermined by the Second Circuit's decision in *Brandon v. Kinter*, which post-dates their memoranda of law.  *Brandon v. Kinter*, 938 F.3d 21 (2d Cir. 2019).  In *Brandon*, the Second Circuit rejected the defendants' argument—like the one

Defendants make here—that serving a Muslim prisoner pork for only ten meals "did not constitute a substantial burden." *Brandon*, 938 F.3d at 36. "The court explained, albeit in the context of religious meals, that 'a small number of noncompliant meals—even a single violation—can be a substantial burden.'" *Sherwood v. Senecal*, 17-CV-0899, 2019 WL 4564881, at *4 (N.D.N.Y. Sept. 20, 2019) (Sannes, J.) (quoting *Brandon*, 938 F.3d at 35; *see also Ford*, 352 F.3d at 593-94 (denying summary judgment and finding a substantial burden on a prisoner's religious beliefs where he was denied the Eid ul Fitr feast, held once per year, to commemorate the conclusion of Ramadan); *Holland*, 758 F.3d at 218 (forcing a prisoner on one occasion "to provide a urine sample by drinking water during his [religiously-mandated] fast . . . placed a substantial burden on [his] religious exercise"); *Skates v. Shusda*, 14-CV-1092, 2016 WL 3882530, at *3 (N.D.N.Y. May 31, 2016) (Peebles, M.J.) (finding that a single "isolated incident" of denying prisoner a special meal bag was a substantial burden), *report and recommendation adopted*, 2016 WL 3824342 (N.D.N.Y. July 13, 2016) (McAvoy, J.)) (finding applicable the reasoning in *Brandon* where the plaintiff allegedly spent thirty-eight days without his crown and testified that it was "mandatory that [he] keep [the crown] on at all times.").

Similarly here, the reasoning in *Brandon* applies. While Defendant Shipman only prevented Plaintiff from attending one Jumu'ah service on March 23, 2018, "establishing a substantial burden is 'not a particularly onerous task,'" and "even a single violation—can be a substantial burden." *Brandon*, 938 F.3d at 32, 35. In addition, Defendants' emphasis that Jumu'ah services are similar to a Sabbath and are held weekly (as opposed to being a significant religious holiday), is misplaced because such a distinction "would require this Court to draw precisely those lines that we have held we are 'particularly ill-suited' to draw." *Id.* at 35 (quoting *Ford*, 352 F.3d at 593). Viewing the evidence in the light most favorable to Plaintiff, I

find that genuine issue of material fact exists regarding whether Defendant Shipman's conduct

substantially burdened Plaintiff's sincerely held religious beliefs.

Moreover, I find that a genuine issue of material fact exists regarding whether Defendant

Shipman's conduct—in preventing Plaintiff from attending Jumu'ah service on March 23,

2018—was reasonably related to a legitimate penological interest.  Plaintiff presented evidence

that Jumu'ah services were called around 12:20 p.m. (Dkt. No. 41 at 28-29), well before his

second request at approximately 12:50 p.m. (Dkt. No. 39, Attach. 7 at ¶ 10.)  In addition,

Plaintiff presented evidence that if he experienced any difficulty attending a Muslim service, that

he was counseled to request that the Correction Officer contact the watch commander or area

sergeant.  (Dkt. No. 41 at 39-40.)  In addition, Plaintiff testified that he did not swear at

Defendant Shipman.  (Dkt. No. 39, Attach. 5 at 66.)  Viewing the evidence in the light most

favorable to Plaintiff, Defendant Shipman then "became furi[ous] and order[ed] [P]laintiff to

'[g]et the hell out of [his] fucking shop!'"  (Dkt. No. 41 at 40; *accord* Dkt. No. 39, Attach. 5 at

29, 63-64.)  These genuine issues of material fact undermine the narrative set forth by Defendant

Shipman that his actions in preventing Plaintiff from attending Jumu'ah service on March 23,

2018, were reasonably related to a legitimate penological interest.

As a result, I reject Defendants' alternative argument that Plaintiff cannot establish that

his religious beliefs were substantially burdened or that Defendant Shipman's conduct was not

reasonably related to a legitimate penological interest.

### 2.    Plaintiff's Retaliation Claim

After carefully considering the matter, I recommend granting Defendants' motion for

summary judgment of Plaintiff's retaliation claim pursuant to the First Amendment for the

reasons set forth in Defendants' memoranda of law.  (Dkt. No. 39, Attach. 2; Dkt. No. 42.)  The following analysis is intended to supplement but not supplant Defendants' arguments.

a.      **Defendant Shipman**

In considering whether there is a "causal connection between the protected speech and the adverse action, a court may consider a number of factors, including any statements made by the defendant concerning his motivation and the temporal proximity between the protected activity and the defendant's adverse action."  *Roseboro v. Gillespie*, 719 F. Supp. 2d 353, 366 (S.D.N.Y. 2011); *see also Tuitt v. Chase*, 11-CV-0776, 2013 WL 877439, at *7 (N.D.N.Y. Jan. 30, 2013) (Dancks, M.J) (factors relevant to a consideration of causal connection "include: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation"), *report and recommendation adopted*, 2013 WL 877617 (N.D.N.Y. Mar. 8, 2013) (Hurd, J.).  The Second Circuit has "held that temporal proximity between protected conduct and an adverse action constitutes circumstantial evidence of retaliation," but has also "consistently required some further evidence of retaliatory animus before permitting a prisoner to proceed to trial on a retaliation claim." *Washington v. Afify*, 681 F. App'x 43, 46 (2d Cir. 2017); *see also Thomas v. Waugh*, 13-CV-0321, 2015 WL 5750945, at *4 (N.D.N.Y. Sept. 30, 2015) (D'Agostino, J. adopting Report-Recommendation on *de novo* review) (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)) ("temporal proximity alone is insufficient to establish an inference of retaliation.").

Here, there is no dispute that the alleged adverse action (March 23, 2018) occurred within close temporal proximity of Plaintiff's protected conduct (March 8, 2018).  (Dkt. No. 39, Attach. 5 at 47-48.)  However, as set forth above, temporal proximity alone is insufficient.

In addition to temporal proximity, in an effort to demonstrate a connection between his prior grievance and Defendant Shipman's misbehavior report of March 23, 2018, Plaintiff alleges that on March 23, 2018, he overheard Defendant Sawyer tell Defendant Shipman that Plaintiff filed a grievance against her.  (Dkt. No. 10 at ¶ 9; Dkt. No. 39, Attach. 5 at 31, 37, 50-51, 67-69.)  Even if the Court were to credit Plaintiff's allegations, which are contrary to Defendants' sworn declarations (Dkt. No. 39, Attach. 7 at ¶¶ 6, 18-19; Dkt. No. 39, Attach. 9 at ¶ 7), the allegations are still insufficient to support a causal connection.

"[C]ourts in this Circuit have repeatedly declined to find evidence of a causal connection where a plaintiff alleged retaliation by a defendant for complaints against other officers or employees."  *Woodward v. Afify*, 14-CV-0856, 2018 WL 9875253, at *13 (W.D.N.Y. Sept. 28, 2018) (citing *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing retaliation claim against a corrections officer where the only alleged basis for retaliation was a complaint about an incident involving another corrections officer); *Hare v. Hayden*, 09-CV-3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant.")).

Moreover, Plaintiff "does not claim that either [D]efendant made a statement reflecting a retaliatory intent for initiating disciplinary charges against him," *Adams*, 2015 WL 1312738, at *12, and there is no other evidence in the record to infer such retaliatory intent.  *See Davis v. Jackson*, 15-CV-5359, 2018 WL 358089, at *11 (S.D.N.Y. Jan. 8, 2018) (citing *Baskerville v. Blot*, 224 F. Supp. 2d 723, 733 (S.D.N.Y. 2002) (finding that "[a defendant's] alleged comment

30

during the assault[,] . . . points to a retaliatory animus," and that "[s]imilarly, [a defendant's] alleged statement to plaintiff[,] 'I should have fucked you up the minute you entered the unit[,]' . . . is circumstantial evidence of retaliatory intent."); *Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 338-39 (S.D.N.Y. 2015) (noting that the general rule set forth in *Wright* and *Hare*, may not apply where there are indications of "a retaliatory purpose—*i.e.*, that the [officer's conduct] was meant to penalize [the plaintiff] for bringing past grievances, and to dissuade future grievances.")) (finding evidence of retaliatory animus sufficient to withstand a motion for summary judgment where the defendant allegedly commented that the plaintiff "like[s] suing people" immediately before filing the misbehavior report); *see also Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (affirming dismissal of retaliation claim where the plaintiff did not provide "any plausible reason why [the defendant] would file an allegedly false misbehavior report other than that [the plaintiff] filed a grievance against" another prison official).  Nor does Plaintiff present any "corroborating statements from other officers or inmates" that would support an inference that Defendant Shipman retaliated against him on behalf of Defendant Sawyer.[12]  *Fabricio v. Griffin*, 16-CV-8731, 2019 WL 1059999, at *8 (S.D.N.Y. Mar. 6, 2019) (citing *Edwards v. Horn*, 10-CV-6194, 2012 WL 760172, at *8 (S.D.N.Y. Mar. 8, 2012)).

As a result, I recommend that the Court dismiss Plaintiff's retaliation claim against Defendant Shipman.[13]

---

[12]    The Court also notes that Defendants were not acquainted with one another before March 23, 2018, which further undermines the argument that Defendant Shipman would file a false misbehavior report against Plaintiff in retaliation for a grievance that Plaintiff filed against Defendant Sawyer.

[13]    To the extent Plaintiff asserts that the adverse action taken by Defendant Shipman was not permitting him to attend the Jumu'ah service on March 23, 2018, I find that Plaintiff failed to establish a causal connection. All Muslim inmates in Tailor Shop 3 were not permitted to attend Jumu'ah services on March 23, 2018.  This weighs against a finding of a causal connection between Plaintiff's protected speech and the adverse action because Defendant Shipman's act

b.    **Defendant Sawyer**

Defendants did not identify, nor could the Court independently locate, any law to support

the contention that endorsing a false misbehavior report or falsely testifying at a disciplinary

hearing could not form the basis of an adverse action for purposes of a retaliation claim.[14]

Viewing the evidence in the light most favorable to Plaintiff, as the Court must, such actions

could arguably deter a similarly situated individual of ordinary firmness from exercising his

constitutional rights. *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003).

As a result, assuming *arguendo* that Plaintiff could establish that Defendant Sawyer took

adverse actions against him, I still recommend that his retaliation claim against her be dismissed.

With respect to the causal connection between Defendant Sawyer's allegedly adverse actions and

---

was not one that singled out or targeted Plaintiff for his prior protected conduct. *Cf. Brandon v. Kinter*, 938 F.3d 21, 42 (2d Cir. 2019) (concluding that a reasonable jury could find causation and retaliatory intent where the plaintiff presented evidence that he was served pork on days when other Muslim inmates were served a meatless meal). In fact, Plaintiff testified that Defendant Sawyer specifically "pointed out [to Defendant Shipman] all three Muslim [inmates] that [were] in the tailor shop" around the same time that he heard "a crackling over the speaker." (Dkt. No. 39, Attach. 5 at 30.) As a result, I conclude that to the extent Plaintiff alleges Defendant Shipman retaliated against him by refusing to allow him to attend Jumu'ah services on March 23, 2018, he failed to identify evidence in the record to support a causal connection between his protected conduct and Defendant Shipman's allegedly adverse action.

[14]    Standing alone, the mere allegation that a false misbehavior report has been filed against an inmate does not give rise to a cognizable constitutional claim. *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). However, the Second Circuit has identified two exceptions to this general rule, including "when an inmate is able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right." *Willey*, 801 F.3d at 63 (quotation marks omitted). Here, Plaintiff alleges that Defendants authored and endorsed the false misbehavior against him for exercising his constitutionally protected right of filing a grievance. *See Maxwell v. City of New York*, 272 F. Supp. 2d 285, 300 (S.D.N.Y. 2003), *vacated in part on other grounds*, 380 F.3d 106 (2d Cir. 2004) (citing *Colon v. Coughlin*, 58 F.3d 865, 871 (2d Cir. 1995) ("[T]ypical protected speech most commonly considered protected [includes] bringing a lawsuit against a defendant or petitioning the government for redress of grievances.")

Plaintiff's protected conduct, the only evidence in the record linking the two is temporal proximity, which as set forth in Part III.B.2.a. *supra*, is insufficient to establish a causal connection. Indeed, Defendant Sawyer attested that she endorsed the misbehavior report pursuant to DOCCS's policy because she was a witness to the events described in the report and not for any retaliatory purpose. (Dkt. No. 39, Attach. 9 at ¶¶ 12-14.) Moreover, Defendant Sawyer attested that she testified at Plaintiff's disciplinary hearing where she "truthfully described [her] recollection of the events that occurred on March 23, 2018," and she testified "because the Hearing Officer requested that [she] do so" and not "in retaliation against Plaintiff for filing a grievance against [her] or any other improper purpose." (*Id.* at ¶ 15.)

As a result, I recommend dismissal of Plaintiff's retaliation claims against Defendants because he failed to adduce evidence of a causal connection between his protected speech and the allegedly adverse actions.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 39) be **<u>GRANTED</u>** and the Amended Complaint be dismissed without prejudice with respect to Plaintiff's free exercise claim against Defendant Shipman, and with prejudice with respect to his retaliation claims against Defendants.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

It is hereby respectfully **ORDERED** that the Clerk of the Court shall file a copy of this Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[15]

Dated: February 11, 2020
        Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[15]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).