```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
```

JEFFREY YOUNG,

                               Plaintiff,                    9:18-cv-00782 (BKS/ML)

v.

S. SHIPMAN and R. SAWYER,

                               Defendants.

**Appearances:**

*Plaintiff, pro se:*
Jeffrey Young
89-A-4618
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

*For Defendants:*
Letitia James
Attorney General of the State of New York
David A. Rosenberg
Assistant Attorney General, of Counsel
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Jeffrey Young, a New York State inmate proceeding pro se, commenced this civil rights action under 42 U.S.C. § 1983, raising claims arising out of his incarceration at the Clinton Correctional Facility. (Dkt. Nos. 1, 10). Following review under 28 U.S.C. § 1915, the following claims survived: First Amendment retaliation claims against Defendants Stephen Shipman and Roxanne Sawyer and a First Amendment free exercise claim against Defendant

Shipman. (Dkt. No 15). Defendants moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure arguing, inter alia, that Plaintiff failed to exhaust his administrative remedies and that his retaliation claims failed as a matter of law. (Dkt. No. 39). The parties filed responsive papers. (Dkt. Nos. 41, 42).

This matter was referred to United States Magistrate Judge Miroslav Lovric who, on February 12, 2020, issued a Report-Recommendation recommending that Defendants' motion for summary judgment be granted and the Amended Complaint be dismissed without prejudice with respect to Plaintiff's free exercise claim against Defendant Shipman and with prejudice with respect to the retaliation claims against both Defendants. (Dkt. No. 44). Magistrate Judge Lovric advised the parties that under 28 U.S.C. § 636(b)(1), they had fourteen days to file written objections to the report and that the failure to object to the report within fourteen days would preclude appellate review. (Dkt. No. 44, at 36). No objections to the Report-Recommendation were filed.

## II. STANDARD OF REVIEW

As no objections to the Report-Recommendation were filed and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment.

## III. DISCUSSION

### A. Exhaustion of Mandatory Administrative Remedies

Magistrate Judge Lovric recommended granting Defendants' motion for summary judgment and dismissing the Amended Complaint without prejudice because Plaintiff commenced this action before receiving a decision on his appeal from the Central Office Review Committee ("CORC"). (Dkt. No. 44, at 21–27). Plaintiff submitted his appeal to the CORC on

2

April 27, 2018, (Dkt. No. 39-11, ¶ 12), which the CORC received on May 10, 2018.[1] (*Id.* ¶ 13). Thus, the CORC was required to respond by June 9, 2018. *See* 7 N.Y.C.R.R. § 701.5(d)(2)(ii). Plaintiff signed the Complaint that commenced this action on June 22, 2018; the mailing envelope is postmarked June 26, 2018. (Dkt. No. 1, at 5; Dkt. No. 1-3). The Complaint was docketed with this Court on July 2, 2018. (Dkt. No. 1). Under the prison mailbox rule, Plaintiff's Complaint is deemed filed upon its delivery to prison authorities for mailing. *See Arzuaga v. Quiros*, 781 F.3d 29, 33 (2d Cir. 2015). The record does not reflect what date he delivered the Complaint to prison officials. Construing the record in the light most favorable to Plaintiff to reflect the longest period of time before he commenced suit, Plaintiff commenced this action on June 26, 2018, seventeen days after the thirty-day time period to respond had expired.[2] A declaration submitted with Defendants' summary judgment motion stated that as of July 5, 2019, over one year after the CORC's deadline had passed, Plaintiff's appeal was still pending, (Dkt. No. 39-11, ¶ 15), and Plaintiff's summary judgment filing states that, as of July 30, 2019, he still had not received a response from the CORC, (Dkt. No. 41, at 35 n.1). The record does not reflect the current status of Plaintiff's appeal.

Magistrate Judge Lovric determined that the CORC's delay during the short time Plaintiff waited before commencing this action is not a delay "that could render the grievance process

---

[1] Courts, including Magistrate Judge Lovric in this case, have sometimes calculated the thirty days within which the CORC must respond to prisoner appeals from the date the appeal was sent to the CORC. (*See* Dkt. No. 44, at 24 (explaining that the "decision by CORC was due" "30 days after the prisoner's filing of his appeal to CORC")). The applicable regulation, however, states that "[t]he CORC shall review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the grievant, the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was *received*." 7 N.Y.C.R.R. § 701.5(d)(2)(ii) (emphasis added).

[2] Because Magistrate Judge Lovric calculated from the date Plaintiff sent his appeal to the CORC, rather than the date the CORC received the appeal, and used the date Plaintiff signed the Complaint rather than the date of postmark, Magistrate Judge Lovric calculated that Plaintiff waited "approximately twenty-six days" beyond the CORC's thirty-day deadline before initiating this action. (Dkt. No. 44, at 23).

unavailable." (Dkt. No. 44, at 25). As Magistrate Judge Lovric noted, there is a split of authority in this Circuit, under the Supreme Court's decision in *Ross v. Blake*, 136 S. Ct. 1850 (2016) and the Second Circuit's decision in *Williams v. Priatano*, 829 F.3d 118 (2d Cir. 2016), regarding what kind of delay by the CORC in deciding a prisoner's grievance renders exhaustion unavailable. *Compare, e.g.*, *Sherwood v. Senecal*, No. 17-cv-00899, 2019 WL 4564881, at *2–4, 2019 U.S. Dist. LEXIS 160295, at *4–8 (N.D.N.Y. Sept. 20, 2019); *Mayandeunas v. Bigelow*, No. 18-cv-1161, 2019 WL 3955484, at *4, 2019 U.S. Dist. LEXIS 142452, at *10–11 (N.D.N.Y. Aug. 22, 2019) (Suddaby, C.J.); *Lovell v. McAuliffe*, No. 18-cv-0685, 2019 WL 4143361, 2019 U.S. Dist. LEXIS 74402 (N.D.N.Y. May 1, 2019), *report and recommendation adopted*, 2019 WL 4142593, 2019 U.S. Dist. LEXIS 147890 (N.D.N.Y. Aug. 30, 2019); *Bell v. Napoli*, No. 17-cv-850, 2018 WL 6506072, 2018 U.S. Dist. LEXIS 208503 (N.D.N.Y. Dec. 11, 2018); *Yates v. Smith*, No. 17-cv-1227, 2018 WL 4635715, 2018 U.S. Dist. LEXIS 116276 (N.D.N.Y. July 11, 2018), *report and recommendation adopted*, 2018 WL 3727357, 2018 U.S. Dist. LEXIS 131450 (N.D.N.Y. Aug. 6, 2018); *High v. Switz*, No. 17-cv-1067, 2018 WL 3736794, 2018 U.S. Dist. LEXIS 114403 (N.D.N.Y. July 9, 2018), *report and recommendation adopted sub nom. High v. PA Switz*, 2018 WL 3730175, 2018 U.S. Dist. LEXIS 131446 (N.D.N.Y. Aug. 6, 2018) *with Dublino v. Schenk*, No. 19-cv-381, 2020 WL 263664, 2020 U.S. Dist. LEXIS 8214 (N.D.N.Y. Jan. 17, 2020); *Staples v. Patane*, No. 17-cv-0703, 2018 WL 7361009, 2018 U.S. Dist. LEXIS 207971 (N.D.N.Y. Dec. 7, 2018), *report and recommendation adopted*, 2019 WL 757937, 2019 U.S. Dist. LEXIS 26563 (N.D.N.Y. Feb. 20, 2019); *Berkley v. Ware*, No. 16-cv-1326, 2018 WL 3736791, 2018 U.S. Dist. LEXIS 113521 (N.D.N.Y. July 6, 2018), *report and recommendation adopted*, 2018 WL 3730173, 2018 U.S. Dist. LEXIS 131445 (N.D.N.Y. Aug. 6, 2018).

This Court has previously concluded that administrative remedies were unavailable under *Ross* in a case where the Plaintiff waited sixty-nine days past the CORC's 30-day deadline to commence an action. *See Sherwood*, 2019 WL 4564881, 2019 U.S. Dist. LEXIS 160295. Here, considering the short time period within which Plaintiff filed his complaint and the intra-Circuit split on this issue, the Court does not find clear error in Magistrate Judge Lovric's determination. *See Warr v. Liberatore*, No. 13-cv-6508, 2018 WL 3237733, at *5, 2018 U.S. Dist. LEXIS 111126, at *13–14 (W.D.N.Y. July 3, 2018) (explaining, in the context of a motion for reconsideration, that "considering the split in authority . . . defendants have not demonstrated that [district court's decision was] clearly erroneous"). Accordingly, the Court adopts Magistrate Judge Lovric's recommendation that Plaintiff failed to exhaust his administrative remedies.

Over one year and two months passed between the CORC's deadline to respond to Plaintiff's appeal and Plaintiff filing his summary judgment opposition. At that point, the CORC had still not responded. In deference to Plaintiff's pro se status, and absent any briefing regarding why dismissal with prejudice would be warranted here, the Court will dismiss this action without prejudice. *See Salim v. Patnode*, No. 18-cv-57, 2018 WL 6381059, at *3, 2018 U.S. Dist. LEXIS 205998, at *6 (N.D.N.Y. Dec. 6, 2018). This decision does not, therefore, preclude Plaintiff from refiling his lawsuit.

B.  **Retaliation Claims**

Magistrate Judge Lovric recommended dismissing Plaintiff's retaliation claims against Defendants with prejudice for the reasons set forth in Defendants' memorandum of law, as supplemented in the Report-Recommendation. (Dkt. No. 44, at 32–37). Magistrate Judge Lovric concluded that Plaintiff failed to establish a causal connection between his protected conduct and the alleged adverse actions.

To establish a First Amendment retaliation claim, the plaintiff must demonstrate: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). In the prison context, "adverse action" is conduct "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003). This inquiry must be "tailored to the different circumstances in which retaliation claims arise," bearing in mind that "[p]risoners may be required to tolerate more . . . than average citizens, before a [retaliatory] action taken against them is considered adverse." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

"Once the plaintiff carries his initial burden, 'the defendants must show by a preponderance of the evidence that they would have disciplined the plaintiff even in the absence of the protected conduct.'" *Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998) (quoting *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (internal quotation marks omitted)). Because of "the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated," prisoners' claims of retaliation are examined with "skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

1. **Plaintiff's Burden**

Defendants did not challenge whether Plaintiff engaged in a protected activity or whether Shipman's alleged conduct constituted an adverse action. Moreover, Magistrate Judge Lovric assumed that Plaintiff could establish an adverse action as to Defendant Sawyer. (Dkt. No. 39-2,

at 11, 15; Dkt. No. 44, at 35). At issue here is Magistrate Judge Lovric's determination that Plaintiff failed to raise a triable issue of fact as to whether there was a causal connection between his protected activity—the grievance filed against Sawyer on March 8, 2018—and the adverse actions on March 23, 2018.[3] There is no dispute, as Magistrate Judge Lovric found, that there is close temporal proximity between the protected conduct and the alleged adverse actions. (Dkt. No. 44, at 33).

     a.  **Defendant Shipman**

As Magistrate Judge Lovric noted, Plaintiff alleges that on the day in question he overheard Sawyer tell Shipman that Plaintiff filed a grievance against her. (Dkt. No. 44, at 33). Magistrate Lovric found that: "[e]ven if the Court were to credit Plaintiff's allegations, which are contrary to Defendants' sworn declarations, the allegations are still insufficient to support a causal connection." (*Id.*) (record citations omitted). In support of his determination, Magistrate Judge Lovric cited to the facts that: (1) courts in this Circuit have declined "to find evidence of a causal connection where a plaintiff alleged retaliation by a defendant for complaints against other officers or employees"; (2) Plaintiff does not claim that either Defendant made a statement reflecting retaliatory intent; and (3) "temporal proximity alone is insufficient." (Dkt. No. 44, at 33).

However, crediting the Plaintiff's allegations in their full context, as the Court must, the Court concludes that Magistrate Judge Lovric clearly erred in failing to draw all reasonable inferences in Plaintiff's favor. To be sure, Shipman and Sawyer each submitted declarations denying having conversations about Plaintiff. (*See* Dkt. No. 39-7, ¶ 18; Dkt. No. 39-9, ¶ 7). "But

---

[3] In addition to the alleged adverse action of filing a false misbehavior report, Plaintiff alleges that Shipman prevented Plaintiff from attending Jumu'ah. (*See* Dkt. No. 15, at 4–5; Dkt. No. 39-2, at 15; Dkt. No 39-2, at 15; Dkt No. 41, at 39; Dkt. No. 44, at 34 n.13).

7

the disparity between [the parties' declarations] itself creates a credibility issue that is not readily amenable to resolution on summary judgment." *Colon*, 58 F.3d at 873.[4] Crediting this alleged conversation, and construing the facts in the light most favorable to Plaintiff, Plaintiff has advanced more than just temporal proximity to support a causal connection. *Id*. (explaining that if temporal proximity "represented the sum total" of the plaintiff's proof, that might be sufficient to grant summary judgment on his retaliation claim).

Plaintiff testified to the following version of the events. He heard a "crackling over the loud speaker and the walkie talkie" immediately when he returned from the mess hall, (Dkt. No. 39-5, at 27), and he saw Sawyer "point[] out all the three Muslims that w[ere] in the tailor shop," both of which led Plaintiff to assume "the [Jumu'ah] service had been called." (*Id.* at 30; Dkt. No. 41, at 35 & n.1).[5] Plaintiff approached Shipman who said that they did not call Jumu'ah. (Dkt. No. 39-5, at 30). Then, Sawyer, after overhearing a conversation involving Plaintiff and other prisoners in the tailor shop, "confronted Plaintiff" and "in an angry tone" asked if he was talking to her. (*Id.* at 30–31). Plaintiff responded that he was not, and Shipman went to Sawyer to inquire "what was going on." (*Id.*). Shipman followed Sawyer as she "marched back to her desk," and asked, "What the hell just happened?" (*Id.*). Sawyer responded "Oh, you mean Young? He wrote me up." According to Plaintiff, who was then near the officer desk area to get a rag, Shipman and Sawyer "became silent." (*Id.*). Plaintiff then returned to his worktable. (Dkt. No. 41, at 35). Shortly after, Plaintiff again asked to attend religious service, and Shipman

---

[4] Defendants cite *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 368 (S.D.N.Y. 2011) for the proposition that "conclusory allegations of conversations where grievances were allegedly discussed are insufficient to demonstrate a causal connection for retaliation purposes." (Dkt. No. 39-2, at 13). In *Roseboro*, however, the Plaintiff merely alleged that he "once saw [guards] talking." *Roseboro*, 791 F. Supp. 2d at 368. Here, by contrast, Plaintiff has described overhearing the substance of the conversation between Defendants and also notes that they stopped talking once they realized he was in earshot. (Dkt. No. 39-5, at 50–51; Dkt. No. 41, at 35).

[5] Plaintiff submitted a prison logbook indicating that Jumu'ah had been called at either 12:20 p.m. or 12:22 p.m. (Dkt. No. 41, at 28, 29).

became belligerent. (*Id*.; Dkt. No. 10, at 2). Plaintiff "request[ed] for the guards to contact the watch commander or area sergeant." (Dkt. No. 41, at 39–40). Plaintiff testified that Shipman and Sawyer then looked at each other. (*Id.* at 35; Dkt. No. 39-5, at 64). Shipman then ordered Plaintiff out of the tailor shop at which point Shipman told Plaintiff "you are not going to . . . Jumu'ah services." (Dkt. No. 39-5, at at 30–31; Dkt. No. 41, at 35). Plaintiff alleges that Shipman issued him a misbehavior report, which Sawyer endorsed, falsely claiming that during his interaction with Shipman, Plaintiff cursed Shipman. (Dkt. No. 39-5, at 66). The misbehavior report charged Plaintiff with creating a disturbance, interference with an employee, and refusing a direct order to go back to his seat. (Dkt. No. 39-7, ¶ 12).[6]

The fact that there is no evidence that Defendants made a statement of retaliatory intent is a factor to consider, but that Plaintiff cannot adduce evidence of such a statement is not fatal to his claim. *Gayle v. Gonyea*, 313 F.3d 677, 684 (2d Cir. 2002) (rejecting defendants' argument that plaintiff "failed to meet his evidentiary burden because he has failed to submit direct evidence that the [misbehavior] report was filed as a retaliatory measure"); *see also Vaher v. Town of Orangetown*, 133 F. Supp. 3d 574, 596 (S.D.N.Y. 2015) ("Direct evidence of retaliatory intent is not required" to overcome summary judgment on a First Amendment retaliation claim.).

Moreover, while as a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant, the cases cited in the Report-Recommendation are factually distinguishable from the present case. In *Woodward v. Afify*, the plaintiff's allegations lacked temporal proximity: the court explained that it "strains credulity that an officer would retaliate against an inmate for lawsuits the inmate filed *years prior* against other individuals."

---

[6] The misbehavior report states that Shipman told Plaintiff at approximately 12:50 that Jumu'ah services had not been called. (Dkt. No. 39-10, at 2).

No. 14-cv-00856, 2018 WL 9875253, at *13, 2018 U.S. Dist. LEXIS 169547, at *42 (W.D.N.Y. Sept. 28, 2018) (emphasis added), *report and recommendation adopted*, 2019 WL 5394217, 2019 U.S. Dist. LEXIS 182722 (W.D.N.Y. Oct. 22, 2019). In *Wright v. Goord*, the plaintiff wrote a letter—the protected activity—addressed to certain guards, none of whom were involved in an alleged retaliatory assault against plaintiff. 554 F.3d 255, 274 (2d Cir. 2009). Here, by contrast, Sawyer endorsed the misbehavior report issued against Plaintiff. In *Hare v. Hayden*, the plaintiff failed to establish that one prison guard "had a motive to retaliate arising from [plaintiff's] complaints" against another guard. No. 09-cv-3135, 2011 WL 1453789, at *4, 2011 U.S. Dist. LEXIS 40683, at *12 (S.D.N.Y. Apr. 14, 2011). Here, however, Plaintiff has adduced evidence that Defendants were discussing Plaintiff's grievance against Sawyer moments before the events giving rise to the misbehavior report and the denial of Jumu'ah transpired.

On this record, Plaintiff has raised a genuine issue of material fact as to whether filing a grievance against Sawyer "was a substantial or motivating factor in [Shipman's] decision to" issue Plaintiff an allegedly false misbehavior report and prevent him from attending Jumu'ah services. *See Graham*, 89 F.3d at 79.

### b. Defendant Sawyer

With respect to Sawyer, Magistrate Judge Lovric concluded that Plaintiff only adduced evidence of temporal proximity to establish a causal connection between the grievance filed against her and the false misbehavior report filed against Plaintiff. (Dkt. No. 44, at 35–36).[7] The

---

[7] Magistrate Judge Lovric "assumed *arguendo*" that Sawyer's endorsement of the allegedly false misbehavior report constituted adverse action after noting that endorsing a false misbehavior report could arguably deter a similarly situated individual from exercising his constitutional rights. (Dkt. No. 44, at 35–36). The Court concurs. *See Higgins v. Coombe*, No. 95-cv-8696, 1997 WL 328623, at *7, 12, 1997 U.S. Dist. LEXIS 8418, at *22, 36 (S.D.N.Y. June 16, 1997) (denying defendants' motion to dismiss, including against a defendant who "allegedly 'endorsed' the false misbehavior report" at issue).

Court disagrees. As with Sawyer, Plaintiff has adduced circumstantial evidence beyond temporal proximity to support a causal connection.

Thus, Plaintiff has raised a genuine issue of material fact as to whether filing a grievance against Sawyer "was a substantial or motivating factor in [her] decision" to endorse Shipman's allegedly false misbehavior report. *See Graham*, 89 F.3d at 79.

### 2. Defendants' Burden

Having found that Plaintiff established a prima facie retaliation claim, the burden "shifts to the defendants to show that, as a matter of law, [Plaintiff] would have been punished to the same extent regardless of the alleged retaliation." *Gayle*, 313 F.3d at 684 (citing *Graham*, 89 F.3d at 80). Defendants argue that Shipman would still have charged Plaintiff with the same misbehavior report regardless of the grievance filed against Sawyer.[8] (Dkt. No. 39-2, at 14–15). However, Plaintiff denies the allegations in the misbehavior report. (Dkt. No. 39-5, at 66; Dkt. No. 41, at 19). Accordingly, viewing the evidence in the light most favorable to Plaintiff, Defendants have not "met their burden of establishing as a matter of law that [Plaintiff] would have been punished to the same extent" he was punished "regardless of the alleged retaliation." *Gayle*, 313 F.3d at 684 (citing *Graham*, 89 F.3d at 80).

Thus, at this stage, viewing the evidence in the light most favorable to Plaintiff, he has raised a triable issue of fact as to whether there was a causal connection between his protected conduct and the alleged adverse actions. *See Brandon*, 938 F.3d at 41. Accordingly, the Court rejects the Magistrate Judge's recommendation that summary judgment be granted with prejudice on Plaintiff's retaliation claim. The Court has reviewed the remainder of the Report-

---

[8] Sawyer similarly stated in her declaration that she would have endorsed the misbehavior report "regardless of any prior grievance by Plaintiff." (Dkt. No. 39-9, ¶ 14).

11

Recommendation for clear error and found none. The remainder of the Report-Recommendation is therefore adopted.

IV.  **CONCLUSION**

For these reasons, it is

**ORDERED** that the Report-Recommendation and Order (Dkt. No. 44) is **ADOPTED** in part and **REJECTED** in part as described above; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 39) is **GRANTED in part,** and the Amended Complaint is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies; and it is further

**ORDERED** that the Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk serve a copy of this Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 23, 2020
Syracuse, New York

Brenda K. Sannes
U.S. District Judge